EDBRO REALTY CO., INC., Plaintiff, *v.* THOMAS F. CLAREY and Others, Defendants.

Supreme Court, Bronx County, November 10, 1931.

*Isaac Joffe* [*Arthur M. Blaine* of counsel], for the plaintiff.

*Milton N. Mound,* referee in person.

*Lawrence R. Condon* for Real Estate Auctioneers Association, appearing *amicus curiæ.*

McGEEHAN, J. In this action to foreclose a tax lien the plaintiff asks that the fees and expenses of the referee upon the sale, exclusive of advertising charges, be fixed at the total sum of seven dollars and fifty cents, and that the referee be directed to execute and deliver to the plaintiff a deed of the property.

The referee makes a cross-motion for a resale or in the alternative

for an allowance to him in the sum of one hundred dollars, together with fifty dollars for auctioneer's services and five dollars for the use of the sales room. He also applies for an additional allowance.

The court is informed that the plaintiff has acquired several hundred tax liens upon real property in the county of Bronx. The determination of these motions will undoubtedly have a bearing upon the actions to foreclose the other tax liens, particularly with respect to the allowances to be made for the fees and expenses of the sales.

Counsel for the Real Estate Auctioneers Association appears *amicus curiæ*.

The tax lien in suit was transferred to the plaintiff pursuant to chapter 17, title 5, of the Greater New York Charter (Laws of 1901, chap. 466). It is therein provided (§ 1035, as amd.) that an action to foreclose a tax lien shall be regulated by the provisions of the Code of Civil Procedure and by all other provisions of law and rules of practice applicable to actions to foreclose mortgages on real property. (See citation in *Matter of Salzberg*, 212 App. Div. 44, 48; affd., 240 N. Y. 651.)

The provisions of the Code of Civil Procedure relating to sales of real property now appear in the Civil Practice Act. Section 506 of the act provides that real property adjudged to be sold must be sold in the county where it is situated, by the sheriff of the county, or by a referee appointed by the court for that purpose. Section 660 provides that a sale pursuant to the directions contained in a judgment must be made at public auction. These statutes are mandatory.

The judgment entered herein required the premises to be sold at public auction at the Real Estate Exchange Sales Rooms, 3208 Third avenue, The Bronx, by or under the direction of the referee thereby appointed for that purpose. The referee was directed to give public notice of the time and place of such sale according to law and the rules and practice of this court. These sales rooms are maintained by the Real Estate Auctioneers Association.

A judgment of foreclosure and sale must be strictly complied with. The referee gave notice of sale in accordance with the judgment herein.

Following the long-established and well-recognized practice in foreclosure actions in this department, the referee engaged the services of an auctioneer to conduct the sale under his direction. With the plaintiff's knowledge, the name of the auctioneer appeared in the notice of sale, as published, and the plaintiff allowed the sale to be thus advertised without objection. The plaintiff signifies a willingness to pay the cost of such publication.

Before the sale, and also at the time and place of the sale, the plaintiff requested the referee to dispense with the services of the auctioneer, claiming that the expense so incurred was unnecessary in this case. The referee offered the property for sale pursuant to the notice. The plaintiff bid it in for the sum of ten dollars. The plaintiff's representative refused to sign the terms of sale because the referee would not make a notation thereon of the plaintiff's objection to the provision for the payment of fifty dollars to the auctioneer and five dollars for the use of the sales room. The sale is now in this uncompleted state. It becomes necessary to decide whether the sale already had shall be confirmed or a resale ordered.

The plaintiff contends that under sections 1546 and 1548 of the Civil Practice Act, the referee is entitled only to the following sums: Five per cent of the sales price, fifty cents; advertising the property for sale, two dollars; drawing and executing conveyance, five dollars; making a total of seven dollars and fifty cents.

To uphold this contention might hereafter lead to a ridiculous result. Suppose the plaintiff should on a future sale make a bid of one dollar, as it might do, and the property be knocked down to it for that amount; then to be consistent it would ask that the referee be allowed a commission of five cents. The absurdity of the plaintiff's attitude hereon thus becomes apparent — fifty cents for instituting and conducting the sale and five dollars for executing and delivering a deed to complete it.

The sale had in this action was not one by the sheriff under an execution against real property. It was in foreclosure by a referee whom the court had the absolute right to designate for such purpose. Section 1546 of the Civil Practice Act provides that a referee's compensation where the sale is under a judgment in an action to foreclose a mortgage cannot exceed $100. The Greater New York Charter prescribes that an action such as this shall be regulated by the statutes and rules applicable to an action to foreclose a mortgage.

There is no good reason why the court should for the accommodation of this plaintiff depart from its established practice. On the contrary, the plaintiff, by its own course of action, impels the court to require it to pay the fees and expenses usually allowed in a foreclosure action. The plaintiff argues that a distinction should be made between an action to foreclose a tax lien and one to foreclose a mortgage. It complains that if it shall be compelled to pay these allowances it will be subjected to an unwarranted hardship. Considering what the plaintiff has done in this action, in its own interests, the court finds ample grounds for requiring it to make the customary payments.

The plaintiff has proceeded herein as though this were an action to foreclose a mortgage. The judgment orders that the property be sold as provided by sections 1082 and 1087 of the Civil Practice Act. These sections appear under article 65, which is entitled "Action to Foreclose a Mortgage." Sections 1512, 1512-a and 1513 of the act provide for additional allowances in an action to foreclose a mortgage. The plaintiff has claimed all of these allowances. It asserts the statutory right to costs allowed in an action to foreclose a mortgage, but when it becomes necessary to bid in the property it seeks to limit the allowances usually made to the referee in such an action and to relieve itself of an item of expense previously incurred by him in connection with the sale.

Notwithstanding that the plaintiff knew that the sale was to be held at the place where foreclosure sales have been conducted since the creation of the county of Bronx, and that the referee had engaged the services of an auctioneer, trained and experienced in conducting such sales, it now urges that such services were not needed.

A sale at public auction by an auctioneer is a time-honored institution. In this State for more than fifty years the fees of auctioneers have been regulated by statute. At the present time they are fixed at a maximum of fifty dollars for each parcel separately sold and five dollars for the use of the sales room. (New York City Consolidation Act [Laws of 1882, chap. 410], § 1995, as amd. by Laws of 1929, chap. 567.)

For years the form of judgment in a foreclosure action has been that the sale be held by or under the direction of a referee, who acts as the officer of the court and not as the representative of any party to the action, thus insuring, as is intended, a fair and impartial sale in the interests of all parties at the best price obtainable. For appropriate observations by the court regarding the duties of the referee and the auctioneer see *Van Boskerck* v. *Hayward* (81 Misc. 370).

The referee realized the importance of having the assistance of a qualified auctioneer. He must be paid. Such expense has always been considered proper and necessary, as even this plaintiff well knows. No distinction should be made between an action to foreclose a tax lien and one to foreclose a mortgage. The procedure is the same, whether the lien be a tax or a mortgage.

The dispute between the plaintiff and the referee over fees appears to be transcended by the substantial property rights of the main defendants as affected by the judgment entered herein and the sale had thereunder at the instance of the plaintiff. Upon examining the judgment roll the court finds that these defendants

are " Thomas F. Clarey, Mrs. Thomas F. Clarey, his wife, Fannie Clarey and Gertrude Clarey, if living, and if they be dead, their heirs at law, next of kin, etc."

Included as a necessary part of such judgment roll are four affidavits of alleged service upon these named defendants of process in the action. Each affidavit, made by the same person, avers that on August 28, 1930, at No. 3 Hawthorne place, Yonkers, N. Y., he served each of these defendants personally. Each of the affidavits is insufficient in that the affiant does not state that he knew the person so served to be a defendant in the action. The wife of Thomas F. Clarey is not designated as a defendant and was not served under her christian name. There is no affidavit of service upon Thomas F. Clarey. It appears that none of the defendants was served with the complaint, only an " object of action." It further appears that the summons and the complaint were served upon the Attorney-General of the State of New York, the complaint alleging that the People of the State of New York are made a party defendant to bar them from any lien or right to collect a transfer or inheritance tax upon the estates of the defendants herein, if they be dead. Why the plaintiff served the Attorney-General with the complaint and the Clareys with only a notice of the object of the action is not understandable.

The only appearance herein is that of the Attorney-General, who admits service of the summons and complaint and waives service of all papers herein, except amended complaint, notice of sale, referee's report of sale and surplus money proceedings.

By order of the court the referee was appointed to ascertain and compute the amount due the plaintiff for principal and interest on the " transfer of tax lien." The referee made the computation and the report as directed. The plaintiff has taxed twenty-five dollars for referee's fees, which is the allowance customarily made for a computation in an action to foreclose a mortgage.

The judgment of foreclosure and sale herein ratifies and confirms such report and then adjudges that the mortgaged (sic) premises described in the complaint, or so much thereof as may be sufficient to discharge the mortgage (sic) debt, be sold. This action was not instituted to discharge a " mortgage debt." It does not appear there is such a debt upon this property. This error in the judgment should be corrected.

During the August, 1931, Special Term, Bronx county, the court had occasion to call this plaintiff's attention to carelessness in procedure in an action brought by it to foreclose another tax lien where, on its own motion, a judgment of foreclosure and sale was

vacated. (See *Edbro Realty Co., Inc.,* v. *Tibbett Ave. Realty Co., Inc.,* N. Y. L. J. Aug. 27, 1931.)

The papers on these motions disclose a situation that forcibly demonstrates the advisability of requiring these sales to be conducted with every formality. The plaintiff's real estate appraiser, in charge of its tax lien department, submits his affidavit that in his " positive " opinion the amount paid by the plaintiff to the city of New York for the transfer of this tax lien, namely, $1,192.77, is " far in excess of the actual value of the land today." An appraiser, employed by a prominent firm in New York city engaged in a general real estate business, who appears to have had a longer experience than the plaintiff's employee, has appraised the property and makes an affidavit that its fair market value is $3,500. For the year 1931 the city of New York has assessed the property for the purpose of taxation at $4,000. These facts and figures are eloquent. Comment is unnecessary.

The chief complaint of the plaintiff seems to be the incurring by the referee of the auctioneer's fees. The referee is charged with having disregarded the plaintiff's " explicit instructions " in enlisting the services of an auctioneer, and " that this action on the part of the referee was a flagrant abuse of his discretion entirely unjustified by the facts of the case." (Affidavit of attorney who states he has personal supervision of this action.) Such attorney also states in his affidavit that in urging the referee to conduct the sale alone, without the assistance of an auctioneer, he told him that the plaintiff had been in communication with Thomas F. Clarey, the owner of the equity of redemption of the property, subsequent to the legal publication of the notice of sale; that there were negotiations with such owner to redeem the property; that " after investigation of the matter and inspection of the property " the owner stated it was not worth the amount of the lien and " therefore he was not interested in redeeming the property and would let it go by default." No affidavit is submitted by the person who had the alleged negotiations with the owner and who heard him make these alleged statements.

The affidavit continues: " These facts all showed conclusively that (1) no damage could be suffered by the owner of the equity if this property were sold by the referee; (2) that the services of an expert auctioneer salesman were not required; (3) that there was very little likelihood of there being any bidder at the sale besides the plaintiff; (4) that there could be no deficiency judgment because there was no personal liability on the tax lien; and (5) that the only person involved in the transaction would be the plaintiff and that its wishes should receive the greatest consideration."

It appears that the plaintiff has not shown the same consideration to the owner.

The defendant Gertrude Clarey states in her affidavit hereon that she is the daughter of the defendant Thomas F. Clarey; that she has not seen or heard from her father since 1914; that he was not served with the summons in this action at No. 3 Hawthorne place, Yonkers, N. Y., where she resides. It further appears that she has one sister and that her correct name is Frances Clarey Biegen. Apparently the defendant Fannie Clarey is not properly named. This action was commenced on August 28, 1930. The defendant Mrs. Thomas F. Clarey, whose Christian name was Julia F. Clarey, died, according to her daughter's affidavit, on January 7, 1929. The judgment of foreclosure and sale herein is based upon personal service on the four named defendants, one of whom died about twenty months before the commencement of the action, another who disappeared in 1914 and still another who is now known by a different name. The reason for the default in appearance of Thomas F. Clarey and his wife is obvious.

This proof, submitted by the referee, stands uncontradicted. The plaintiff has not seen fit to explain the service of process claimed to have been made upon Mr. and Mrs. Clarey, although given an opportunity so to do.

With the record in this state, the court cannot direct a completion of the sale.

As the referee conducted the sale in reliance upon the judgment the plaintiff had entered in this action he has earned and is entitled to the fees and expenses usually allowed in a foreclosure action.

The plaintiff's motion is in all respects denied. The referee's cross-motion is granted to the extent of requiring the plaintiff to pay him, within ten days from date of service of a copy of the order to be entered hereon, one hundred dollars for his services, the cost of publishing the notice of sale, fifty dollars for the auctioneer's services and five dollars for the sales room charge. A resale of the property is ordered to be conducted by the same referee after the plaintiff has corrected its proceedings as hereinbefore indicated.

Settle order.